NOT FOR PUBLICATION                              [26, 40, 43]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————
                                    :
PEGASUS CONSULTING GROUP,           :     Civil Action No. 05-5161 (FLW)
                                    :
        Plaintiff,                  :
                                    :          **OPINION**
    v.                              :
                                    :
ADMINISTRATIVE REVIEW BOARD         :
FOR THE DEPARTMENT OF LABOR,        :
WAGE AND HOUR DIVISION,             :
EMPLOYMENT STANDARDS                :
ADMINISTRATION,                     :
                                    :
        Defendant.                  :
———————————————————:

**WOLFSON, District Judge**

Presently before the Court are cross-motions for summary judgment by Plaintiff, Pegasus

Consulting Group ("Pegasus"), and Defendant, Administrative Review Board for the Department

of Labor, Wage and Hour Division, Employment Standards Administration (the "DOL").

Additionally, Pegasus has moved for leave to amend its Complaint.  In connection with the

pending motions, the Court has before it the extensive Administrative Record.[1]  The Court has

jurisdiction pursuant to 28 U.S.C. §§ 1346.  For the reasons that follow, and for good cause

shown, the motion for leave to amend is GRANTED as is Pegasus' motion for summary

judgment.  The DOL's motion for summary judgment is DENIED.

---

[1]    References to the Administrative Record will be designated by the abbreviation "R" followed by
the page number, e.g. "R. 0001".

## I. BACKGROUND

This case is on appeal from a Final Decision and Order of the Administrative Review Board (the "ARB") of the DOL, dated June 30, 2005.  The matter arises out of an enforcement action brought against Pegasus by the DOL for alleged violations of the Immigration and Nationality Act (the "INA" or the "Act"), the H-1B visa program, 8 U.S.C. § 1101(a)(15)(H)(i)(b), and the implementing regulations at 20 C.F.R. Part 655.  From January 1999 through April 2000, Pegasus, a New Jersey-based consulting firm, provided services to its corporate customers on a contract basis involving "SAP" software.  During that time, Pegasus employed between 100 and 200 non-immigrant, foreign workers through the H-1B visa program, including the 19 employees named in the enforcement action which gives rise to the instant action (the "subject employees").  R. 2016.  Prior to placing the subject employees on SAP projects and other client engagements, Pegasus first received approval from the DOL of the necessary Labor Condition Applications ("LCA") and thereafter obtained the necessary H-1B visas.

The subject employees signed employment agreements with Pegasus providing their rate of pay, consistent with the terms of the applicable LCAs, and requiring thirty days written notice from either party prior to termination.  R.246-77, 280-89, 337-42, 350-55, 390-93, 407-12, 509-14, 526-31, 644-50, 662-67, 683-87, 697-702, 710-15, 757-62, 785-90, 798-802, 839-44, 888-92, 930-35.  Additionally, prior to their arrival in the United States, Pegasus required each of the employees to pay a security deposit in the amount of 175,000 Indian Rupees (approximately $3,600), which was to be refunded to each employee after working for Pegasus in the United

States for a year.  R. 291-335, 356-61, 370-83, 413-14, 722, 763-65, 803-04, 845-74, 1729, 1825-27.

Sometime in 1999, the SAP consulting sector experienced a downturn and Pegasus management decided to downsize operations and layoff a significant number of its consultants. R. 1947-48.  The downsizing occurred over a period of several months as the employees "rolled off" client engagements.  R. 1947, 2063, 2062, 1963, 2247, 2303.  Pegasus offered transportation reimbursement to those terminated employees and their families to return to India (R. 2069) and additionally agreed to re-hire the terminated workers in India at a base salary that was higher than that previously paid by Pegasus Softwares.[2]  R. 1951-52, 2069.   Only one employee accepted the offer of return transportation and related offer of employment.  R. 1039.  As a condition for security deposit refunds, Pegasus asked its employees to sign severance documents attesting that Pegasus did not owe any back wages.  R. 622-28, 716-20, 914-16, 1001-07, 1752, 1878-79.  It is undisputed that Pegasus did not notify the United States Immigration and Naturalization Service (the "INS") of its "layoffs".  R. 2718-19.

Following its receipt of ten complaints of unlawful wage practices involving alleged insufficient payment of wages to H-1B workers for nonproductive time, the Wage and Hour Division of the Employment Standards Administration, commenced an investigation of Pegasus. R. 1519-20.  Significantly, the demand served on Pegasus by Investigator Ronald Rehl to inspect Pegasus' records, which records were later used as evidence at trial, was made under the authority vested in the DOL pursuant to 20 C.F.R. § 655.731(b)(1)(1995).  That regulation,

---

[2]        Pegasus Softwares Private Ltd. was the India-based company with which Pegasus formed an affiliation in an effort to enlist and retain individuals who possessed applicable computer, functional, and/or technical training and experience.  Pegasus Br. at 5.

3

however, was among a number of regulations which had been invalidated by a federal court on procedural grounds three years prior, in 1996.  See National Ass'n of Manufacturers v. Department of Labor, No. 95-0715, 1996 WL 420868 at * 1 (D.D.C. July 22, 1996).

Following his investigation, Rehl determined that the so-called "layoffs" were not bona fide terminations and, accordingly, determined that Pegasus had failed to pay required wages to the subject employees for nonproductive time and/or productive time between January 1999 and April 2000, as required by 8 U.S.C. § 1182(n)(1)(A), 8 U.S.C. § 1182(n)(2)(C)(vii)(I), and 20 C.F.R. § 655.731(c)(1995).  R. 0001-0002.  Rehl reasoned that despite Pegasus' claims that the subject employees had been "rehired", termination could not be found because Pegasus had failed to notify INS of the terminations (R. 1554, 1612, 1616, 1651, 1661-62, 1667) and, further, had failed to apply for new H-1B visas for the purportedly terminated employees.  R. 1554. Based on those findings, the DOL assessed a civil money penalty against Pegasus in the amount of $40,000 in addition to computed back wages in the amount of $401,228.21.  R. 0001.

In response to Pegasus' timely request for a hearing (R. 2473), the parties appeared before an Administrative Law Judge (the "ALJ") on January 22, February 26, and April 2-3, 2002.  R. 2448.  Following the four-day hearing, the ALJ issued a Decision and Order on November 13, 2002, finding that the record supported the imposition of $40,000 in civil money penalties pursuant to 8 U.S.C. 1182(n)(2)(C)(ii)(I) for the "willful failure" to pay wages as required under 20 C.F.R. § 655.731 with regard to eight of the subject employees.  The ALJ concluded that Pegasus' President and sole shareholder, Paul Parmar, as well as its Vice-President of Finance, S. Zaharis, were fully aware of Pegasus' wage obligations under the H-1B visa program, including the wage payment requirement for non-productive time.  The ALJ found persuasive the fact that

4

the H-1B visa status of the employees was not cancelled by notification to the INS because of the difficulties anticipated with the filing for new H-1B visas, the fact that Pegasus threatened not to return security deposits unless the subject employees agreed in writing that no wages were due, and the "admission" by Pegasus in its initial documentary admission to the case investigator that the subject employees were on "leave without pay", which the ALJ noted, was "inherently inconsistent with the statutory scheme here involved designed to protect the American worker from cheap, uncompetitive, foreign labor.  Additionally, the ALJ found the asserted wage deficiencies validly due and owing in the amount of $231,279.41 with regard to 14 of the subject employees based on his conclusion that no bona fide termination had occurred.  Citing 10 C.F.R. Part 655 (Preamble at 80171), the ALJ concluded that no bona fide termination can occur where the employer rehires the "terminated" or "laid off" employee.  Moreover, the ALJ reasoned, termination could not have occurred because Pegasus never notified the INS of any terminations so that the H-1B status of the employees could be cancelled as required by 8 C.F.R. § 214.2(h)(11).

Both Pegasus and the DOL timely appealed the ALJ's Decision and Order.  R. 2473, 2466.  On June 30, 2005, the Administrative Review Board (the "ARB") issued a decision affirming in part and reversing in part the decision of the ALJ.  The ARB concurred with the ALJ's finding that the layoffs of the subject employees did not qualify as *bona fide* terminations because Pegasus failed to notify the INS or to obtain new H1-B visas.  Accordingly, with respect to the subject employees who testified at the hearing, the ARB concluded that the ALJ correctly found that Pegasus did not effect *bona fide* terminations, and was, therefore, under an obligation to pay back wages to those employees.  Additionally, the ARB found that based on the

5

representative testimony of witnesses, corroborating evidence and reliable hearsay, the DOL had

established the right of non-testifying subject employees to back wages.[3]   The ARB likewise

found that back wages were due to two of the subject employees who, as current employees of

Pegasus, had testified that no wages were due and owing to them based on the finding that the

employees were not on voluntary leaves of absence and that Pegasus had failed to properly

terminate their employment.  Notably, in finding that back wages were due to the subject

employees, the ARB applied 8 U.S.C.A. § 1182(n)(2)(C)(vii)(I), rather than 20 C.F.R. §

655.731(c)(5)(1995), citing the fact that 20 C.F.R. § 655.731(c)(5) had been declared invalid in

National Ass'n of Manufacturers v. Department of Labor, No. 95-0715, 1996 WL 420868 at * 1

(D.D.C. July 22, 1996).  The ARB further found that the ALJ had improperly given credit to

Pegasus for miscellaneous payments to four of the subject employees as salary advances because

the wages were not shown on Pegasus's payroll records and not reported to the IRS.  Finally, the

ARB accepted the ALJ's assessment that Pegasus committed willful violations warranting the

imposition of civil monetary penalties under 8 U.S.C.A. § 1182(n)(2)(c).

Pegasus thereafter filed a petition with the Third Circuit for review of the Order of the

ARB.  By Order dated October 25, 2005, this case was transferred to this Court by the Third

Circuit pursuant to 28 U.S.C. § 1631.  Pegasus filed its Complaint on March 8, 2006, and a

briefing schedule for the cross-motions for summary judgment was thereafter agreed upon by the

parties.  On November 21, 2006, following the submission of the DOL's motion for summary

judgment, Earp Cohn, P.C., counsel for Pegasus, moved to be relieved as counsel.  The motion

---

[3]       Because three of the subject employees never gave interview statements to Investigator Rehl and
did not testify at trial, the ALJ had ruled that the DOL failed to meet its burden of proof with respect to unpaid wages
for those employees.

was granted by Order dated January 8, 2007, and the briefing of the cross-motions for summary

judgment was completed on March 14, 2007.  Thereafter, on April 18, 2007, Pegasus moved for

leave to amend its Complaint.

## II.     Legal Standard

Although this case appears before this Court on cross-motions for summary judgment,

judicial review of an agency's final determination is governed by the Administrative Procedure

Act (the "APA"), 5 U.S.C. § 701 *et seq.*, rather than the typical summary judgment standard.

Pursuant to Section 706(2), a reviewing court must

> hold unlawful and set aside agency action, findings, and
> conclusions found to be –
>
> (A)  arbitrary, capricious, an abuse of discretion, or otherwise
> not in accordance with law;
> (B)  contrary to constitutional right, power, privilege, or
> immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations,
> or short of statutory right;
> (D) without observance of procedure requried by law;
> (E) unsupported by substantial evidence in a case subject to
> sections 556 and 557 of this title or otherwise reviewed on the
> record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are
> subject to trial de novo by the reviewing court.

[5 U.S.C. § 706(2)].  Thus, under the APA, the function of the reviewing court is limited.  A

reviewing court may not substitute its judgment for that of the agency.  <u>Citizens to Preserve</u>

<u>Overton Park v. Volpe</u>, 401 U.S. 402, 413-15 (1971), *overruled on other grounds*, <u>Califano v.</u>

<u>Sanders</u>, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).  Rather, "the court's inquiry is

limited to determining whether the agency 'considered the relevant factors and articulated a

rational connection between the facts found and the choice made', <u>Baltimore Gas & Elec. Co. v. Natural Res. Defense Counsel, Inc.</u>, 462 U.S. 87, 105 (1983), and 'whether there has been a clear error of judgment.' <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983)." <u>Sierra Club v. United States Army Corps of Engineers</u>, No. 05-CV-1742, 2005 WL 2090028 at * 8 (Aug. 29, 2005).   Moreover, "substantial deference is given to an agency's interpretation of statutes it administers, and particularly to its own regulations, so long as the interpretation is a permissible one." <u>Id.</u> (citations omitted).

## III.    ANALYSIS

### A.    Statutory and Regulatory Framework

The INA, 8 U.S.C. § 1101 *et seq.*, allows the admission of aliens into the United States to perform services in a specialty occupation that meets specific requirements of the Act.[4]   The INA provides, in pertinent part, that a "nonimmigrant" is an alien "who is coming temporarily to the United States to perform services in a specialty occupation . . . and with respect to whom the Secretary of Labor determines and certifies to the Attorney General that the intending employer has filed with the Secretary an application under section 1182(n)(1) . . . ."   Nonimmigrants thus defined may therefore be admitted upon a determination by the Attorney General that the pertinent requirements are satisfied.  Pursuant to the applicable regulations, a prospective nonimmigrant employer is required to file with the Department of Labor, and obtain Department of Labor certification of, a labor condition application (an "LCA").  20 C.F.R. § 655.700(b)(1).  After obtaining DOL certification of the LCA, the employer is required to submit a

---

[4]        A "specialty occupation" is defined under the Act as requiring the application of highly specialized knowledge and the attainment of a bachelor's degree or higher.  See 8 U.S.C. § 1184(i)(1).

nonimmigrant visa petition, together with a certified LCA, to the United States Citizenship and Immigration Services of the Department of Homeland Security (the "DHS") for approval.  20 C.F.R. § 655.700(b)(2).   The determination of whether the H-1B visa should be issued is delegated to the DHS and is governed by DHS regulations.  See 20 C.F.R. § 655.700(b)(2) - (3). Pursuant to 8 U.S.C. § 1182(n)(2)(A), the Secretary of the DOL (the "Secretary") has the authority to establish the process for receipt, investigation, and disposition of complaints in connection with a petitioner's failure to meet a condition specified in an LCA or a petitioner's misrepresentation of material facts in an LCA.  Through its regulatory scheme, the DOL delegates enforcement authority to the DOL Administrator.  Pursuant to 20 C.F.R. § 655.805, the Administrator is granted the authority to investigate, among other things, the failure of an employer to pay required wages.   Further, the DOL is authorized to determine whether civil monetary penalties may be imposed for willful violations.  20 C.F.R. § 655.805(b); 20 C.F.R. § 655.810(b).

Pursuant to the INA, an employer must not only pay specified wages for work actually performed by the H-1B worker, the employer must also pay full-time wages for certain specified nonproductive periods where the nonproductive period is due to a decision by the employer.  8 U.S.C. § 1182(n)(2)(C)(vii).  If the Secretary finds, after notice and an opportunity for a hearing, that an employer has failed to pay the wages required, the Secretary has the authority to order the employer to provide back wages to the aggrieved employee.  8 U.S.C. § 1182(n)(2)(D).

The issue of payment for non-productive periods is also addressed in DOL regulations governing the determination, payment and documentation of the required wages.  See 20 C.F.R. § 655.700 et seq. (under the 1995 and 2000 regulations).  The parties agree that the relevant

period in this case was 1999-2000, and thus the 1995 DOL regulations governed the

administrative enforcement action.  Def. Br. at 2, n.3.  Significantly, however, the 1995

regulation requiring an employer to compensate its H-1B workers for nonproductive time, 20

C.F.R. § 655.731(c)(5)[5], was declared invalid in National Ass'n of Manufacturers v. Dep't of

Labor, No. 95-0715, 1996 WL 420868 at * 18 (D.D.C. July 22, 1996) based upon the court's

determination that the DOL promulgated the rule in violation of the APA's notice and comment

requirements.  Accordingly, the court declared 20 C.F.R. § 655.731(c)(5) invalid and void and

permanently enjoined "the Department of Labor, its Employment and Training Administration,

its Wage and Hour Division within its Employment Standards Administration, and all of its

officers, agents, servants, employees and attorneys, and all persons in active participation with

them or any of them" from implementing or enforcing 20 C.F.R. § 655.731(c)(5).  Similarly, the

court set aside 20 C.F.R. § 655.731(b)(1), which addressed the employer's obligation regarding

the actual wage documentation requirement, based on its determination that the rule was initially

promulgated in contravention of the APA's notice and comment requirements.  See National

Ass'n of Manufacturers v. Dep't of Labor, No. 95-0715, 1996 WL 420868 at * 17.   Because the

DOL brought the enforcement action which is the subject of the instant appeal under 20 C.F.R. §

655.731(c)(5) and additionally obtained employment records from Pegasus pursuant to 20 C.F.R.

§ 655.731(b)(1) at a time when it was permanently enjoined from implementing and enforcing

those very regulations, the focus of the instant appeal centers on those regulations.

---

[5]        This regulation has since been promulgated in accordance with the APA's procedural requirements and is now codified at 20 C.F.R. § 655.731(c)(7).

**B.      Cross-Motions for Summary Judgment**

Pegasus contends that summary judgment in its favor is compulsory here where the DOL knowingly violated the federal injunction imposed in National Ass'n of Manufacturers v. Department of Labor, No. 95-0715, 1996 WL 420868 by initiating an enforcement action under 20 C.F.R. § 655.731(c)(5) and 20 C.F.R. § 655.731(b)(1).  Pegasus reasons that because at least two of the regulations essential to the DOL's case were invalid when the action was commenced and remained so at the time of the hearing, the case must fail as a matter of law because the DOL cannot show the existence of an element essential to its case.  Pegasus Br. at 13.  Moreover, Pegasus contends that because all of the non-hearsay evidence relied upon by the DOL at trial was procured under invalidated 20 C.F.R. § 655.731(b)(1), everything that resulted therefrom should be considered "fruit from the poisonous tree."  Id.  Pegasus concedes that the instant controversy arises under the INA, however, it argues that because it was never expressly charged with violating 8 U.S.C. § 1182(n)(2)(c)(vii)(I), the finding of liability by the ARB under that statutory provision was improper.  Id. at 16.

Additionally, Pegasus contends that summary judgment in its favor is warranted because the DOL is without authority to determine when there has been a "bona fide termination" of H-1B nonimmigrant employees.  The finding that a "bona fide termination" has occurred is significant because it relieves an employer of its obligation to pay wages for a nonproductive period.  See 20 C.F.R. § 655.731(c)(7)(ii).  Pegasus reasons that because neither Congress, nor the INS through its regulatory scheme, authorized the Administrator to determine whether an H-1B employee has been terminated, the DOL lacked the requisite legal authority to make that

11

determination.  Pegasus takes issue with both the ALJ's and the ARB's reliance on the 2000

preamble to Part 655 (Preamble at 80171) which provides:

> [U]nder no circumstances would the Department consider
> it to be a bona fide termination if the employer rehires the
> worker if or when work becomes available unless the H-
> 1B worker has been working under an H-1B petition with
> another employer, the H-1B petition has been canceled
> and the worker has returned to the home country and been
> rehired by the employer, or the nonimmigrant is validly in
> the United States pursuant to a change of status.

Pegasus contends that the ARB's reliance on the foregoing language in the 2000 preamble to Part

655, in finding that it did not effect bona fide termination with respect to the 19 subject

employees, robbed Pegasus of its rightful expectation of at least constructive notice of the laws

and regulations to which it would be held accountable because not only is it not controlling, the

preamble language did not even exist during the time period relevant to the enforcement action.

Finally, assuming, *arguendo*, that the DOL indeed had the statutory authority to determine

whether a bona fide termination occurred in connection with the subject employees, Pegasus

contends that the ARB still committed reversible error in basing its determination on the fact that

INS regulations require an employer to notify the INS that the employment relationship has been

terminated because there is nothing in the regulatory scheme that suggests such notice is

determinative of whether termination has, in fact, been effectuated.  See 8 C.F.R. § 214.2(h).

The DOL counters that it indeed had the authority to determine when an H-1B

employee's employment has terminated.  Because the INA requires an employer to pay wages to

an H-1B employee in nonproductive status, see 8 U.S.C. § 1182(n)(2)(C)(vii)(I), and, further,

gives the Secretary the responsibility to investigate and determine whether a violation of wage

requirements has occurred, and to provide for the payment of back wages and imposition of civil money penalties, see 8 U.S.C. § 1182(n)(2)(A); 8 U.S.C. § 1182(n)(2)(D); 8 U.S.C. § 1182(n)(2)(C), the DOL contends that the Secretary necessarily has the authority to determine whether or not a bona fide termination of an H-1B employee has occurred.  As the DOL points out, "[w]ithout the ability to rule on whether or not a bona fide termination occurred, DOL would be hamstrung when performing the statutorily mandated function of enforcing the provisions of an LCA."  DOL Br. at 12.  The DOL contends that the Secretary not only has the authority, but the obligation, to establish the dates within which wages are due, which task necessarily encompasses the determination of when a termination occurs.  Accordingly, the DOL contends that substantial evidence supports a finding that Pegasus violated 8 U.S.C. § 1182(n)(1)(A), 8 U.S.C. § 1182(n)(2)(C)(vii)(I) and 20 C.F.R. § 655.731(c)(1995) based upon its failure to effectuate bona fide terminations of the 19 H-1B employees and concomittant failure to pay wages to those employees for nonproductive time.  DOL Br. at 13.

It is undisputed in this case that the 1995 regulations in effect during the relevant time period required for the first time the payment of wages for nonproductive time.  See 20 C.F.R. § 655.731(c)(5).  DOL Reply Br. at 1-2.  Additionally, it is undisputed that the DOL was enjoined during the relevant time period from enforcing both 20 C.F.R. § 655.731(c)(5) and  20 C.F.R. § 655.731(b)(1).  Id.   Nevertheless, the DOL contends that because Congress amended the INA to require the payment of wages for nonproductive time in 1998, see 8 U.S.C.§ 1182(n)(2) (C)(vii)(I) and because the INA granted the DOL broad authority to investigate complaints under 8 U.S.C. § 1182(n)(2)(A), the DOL had clear statutory authority to require payment for

nonproductive time and to request the records necessary to establish the violation.  DOL Rep. Br. at 3.

This Court recognizes that there were indeed statutory provisions in place during 1999-2000 pursuant to which the DOL could have proceeded against Pegasus in connection with its alleged violations of the INA.  However, as Pegasus points out, the DOL did not pursue the enforcement action against it based upon those statutory provisions.  Indeed, the DOL indisputably charged Pegasus with the failure "to pay wages as required in violation of 20 CFR 655.731(c) and 10 CFR 655.805(a)(2) (1995-20 CFR 655.731(c) and 20 CFR 655.805(a)(6)", see R. 0004, and the hearing conducted before the ALJ indisputably focused on Pegasus' alleged violations of 20 C.F.R. § 655.731(c)(5) and involved employment records obtained pursuant to 20 C.F.R. § 655.731(b)(1).  In issuing its decision, the ARB recognized this error, noting in a footnote that it instead would apply 8 U.S.C. § 1182(n)(2)(C)(vii)(I), based on its finding that the statutory provision was the "same as the invalidated regulation."  R. 2875.  While there is certainly support for the position that 8 U.S.C. § 1182(n)(2)(C)(vii)(I) encompasses the same subject matter as 20 C.F.R. § 655.731(c)(5), see 64 Fed. Reg. 628, 647 (Jan. 5, 1999)("[T]he ACWIA provision is a statutory enactment of the Department's current [1995] regulation, the enforcement of which (along with some other provisions) was enjoined by a district court on Administrative Procedure Act procedural grounds (Nat'l Assoc. of Manufacturers v. Reich, No. 95-0715, D.D.C. July 22, 1996)."), nonetheless the ARB's finding that 8 U.S.C. § 1182(n)(2)(C)(vii)(I) mirrored the invalidated 20 C.F.R. § 655.731(c)(5) is not warranted and this Court is troubled by what is, in effect, a finding of "no harm, no foul" by the ARB.  Indeed, although the statute indisputably mandated payment of wages to H-1B workers placed in

14

nonproductive status due to a decision by the employer "based on factors such as lack of work", the statute clearly did not provide for the same pervasive enforcement scheme imposed by the invalidated regulation.  With only a vague reference to "factors such as lack of work", the statute contained virtually none of the particulars under which an employer is obligated to pay H-1B workers that were fleshed out in the invalidated regulation.

Clearly the basic notion of due process warrants a ruling by this Court that the ARB may not *sua sponte* find Pegasus culpable for violations of statutory provisions with which it was never charged.  This Court simply cannot accept the DOL's contention (DOL Rep. Br. at 4) that despite "the mistaken references" to the invalidated regulations in its initial determination letter, its statement in that letter that it concluded its investigation "under the H-1B provisions of the INA, as amended" somehow cured the deficiency in its Summary of Violations.  See R. 0001-0004.  Moreover, the Court is particularly troubled here where the DOL proceeded in blatant violation of a court order which indisputably enjoined it three years earlier from implementing or enforcing 20 C.F.R. § 655.731(c)(5) and 20 C.F.R. § 655.731(b)(1).   The DOL does not dispute the application of the injunctive order entered by the district court in connection with 20 C.F.R. § 655.731(c)(5) and 20 C.F.R. § 655.731(b)(1).   Nor does it dispute the well established principle that "injunctive orders of courts be obeyed until modified or reversed by a court having the authority to do so."  See Pasadena City Bd. of Educ. v. Spangler, 427 U.S. 424, 439, 96 S.Ct. 2697, 2706, 49 L.Ed.2d 599 (1976).   There is no doubt that the DOL proceeded in investigating and prosecuting this action in accordance with its perceived authority under the invalidated regulations and not upon the statute.  The ARB's decision to base its ruling on the statute is nothing more than an after the fact justification for an improperly prosecuted action and its

15

failure to provide any meaningful analysis whatsoever for its decision to uphold the ALJ's determination on alternative statutory grounds is the very definition of arbitrary and capricious agency action. Accordingly, this Court finds that reversal of the ARB's decision is warranted.

Given this Court's reversal of the ARB's decision on the foregoing grounds, the Court need not address Pegasus' contention that the Secretary was without authority to determine whether a bona fide termination occurred, although the Court questions Pegasus' contention in this regard in light of its investigative and enforcement duties, and in light of the substantial deference that must be accorded to an agency's interpretation of its own regulations. See Sierra Club v. United States Army Corps of Engineers, supra, 2005 WL 2090028 at * 8. Nor does the Court find it necessary to address the remaining arguments raised by Pegasus concerning specific evidentiary rulings.

C.     Motion to Amend

Pursuant to Fed.R.Civ.P. 15(a), leave to amend the pleadings is generally given freely. Foman v. Davis, 371 U.S. 178, 182 (1962). Notwithstanding this liberal standard, courts will deny a motion to amend on grounds of dilatoriness or undue delay, prejudice, bad faith or futility. See Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000); Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005). If there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004). In reviewing a motion to amend, the court looks only at the pleadings. Pharm. Sales & Consulting Corp. v. J.W.S. Delavau, Co., Inc., 106 F. Supp.2d 761, 765 (D.N.J. 2000).

Here, the DOL has opposed the motion to amend on the grounds that the proposed amendment is untimely, would induce procedural confusion, and is futile.  The DOL contends that Pegasus does not seek to amend its complaint on any of the "usual grounds, e.g., to add factual allegations that would cure a plaintiff's initial failure to state a claim or to properly assert personal or subject matter jurisdiction; or to add another proper party; or to allege facts occurring after the initial complaint was filed."  DOL Opp. Br. at 8.  As Pegasus points out, however, the DOL's contention in this regard is belied by its own Statement of Facts in which it asserts that "Pegasus proposes to add a new count (new Count I, ¶¶ 32-37), and nine new numbered paragraphs to the 'Factual Background' portion of the pleading (¶¶ 16-24)."  DOL Opp. Br. at 5-6.

Nevertheless, upon careful review of the amended complaint, the Court finds that the proposed amendments are, in effect, amendments to conform to the evidence presented to the Court and, therefore, warrant this Court's grant under Fed.R.Civ.P. 15(b).  Indeed, in opposing the motion for leave to amend, the DOL contends that Pegasus' "proposed amended pleading recites legal arguments that Pegasus has already proffered at length in its moving papers" and "[t]he Board has responded to these legal contentions, and they presently await the Court's determination on the parties' pending cross-motions for summary judgment as to the claims in the initial complaint."  DOL Opp. Br. at 9.  Accordingly, Pegasus' motion to amend the complaint is granted.  To the extent that Pegasus' amended complaint may, as the DOL suggests, be construed as a foundation for a hoped-for application for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), Pegasus is hereby granted leave to move before the

Court for such award within thirty (30) days of the date of this decision.


**IV.     CONCLUSION**

For the reasons discussed herein, the court GRANTS the motion for summary judgment and motion for leave to amend filed on behalf of Pegasus and DENIES the motion for summary judgment filed by the DOL.  An appropriate order will follow.


Dated: June 26, 2007

                                                                        /s/ Freda L. Wolfson
                                                                        Honorable Freda L. Wolfson
                                                                        United States District Judge

18