**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                        :
                                        :        Civil Action No. 05-5161 (FLW)
                                        :
PEGASUS CONSULTING GROUP,               :
                                        :
            Plaintiff,                  :
                                        :           **OPINION**
    v.                                  :
                                        :
ADMINISTRATIVE REVIEW BOARD             :
FOR THE DEPARTMENT OF LABOR,            :
WAGE AND HOUR DIVISION,                 :
EMPLOYMENT STANDARDS                    :
ADMINISTRATION,                         :
                                        :
            Defendant.                  :
_____:


**WOLFSON, UNITED STATES DISTRICT JUDGE**

        Before the Court is the motion by Defendant Administrative Review Board for the

Department of Labor, Wage and Hour Division, Employment Standards Administration (the

"DOL"), pursuant to L. Civ. R. 7.1, for reconsideration of this Court's Opinion and Order of

June 27, 2007, granting the cross-motion for summary judgment filed by Plaintiff Pegasus

Consulting Group ("Pegasus"), and denying the cross-motion for summary judgment filed by the

DOL.  Specifically, the DOL argues that reconsideration is necessary to correct clear errors of

both law and fact and to avoid manifest injustice.  In addition, Pegasus has filed a Motion for

Sanctions pursuant to Fed. R. Civ. P. 11.  The Court has considered the moving, opposition and

reply papers, and for the reasons stated in the opinion below, Defendant's motion for

1

reconsideration of the June 27, 2007 Opinion and Order is granted, this Court's original grant of summary judgment to Pegasus is vacated and summary judgment is granted in favor of the DOL.

## I.        BACKGROUND

This case concerns the Immigration and Nationality Act (the "INA" or the "Act"), the H-1B visa program, 8 U.S.C. § 1101(a)(15)(H)(i)(b), and regulations promulgated by the DOL pursuant to the foregoing statutory scheme and initially came before this Court on cross-motions for summary judgment following lengthy administrative proceedings.  See generally Pegasus Consulting Group v. Administrative Review Board for the Department of Labor, 2007 WL 1876507 (D.N.J. June 27, 2007).[1]  On June 8, 2001, the DOL issued a Determination Letter concluding that Pegasus had violated the INA based upon its failure to pay the required wage rate to 19 nonimmigrant workers in the amount of $401,228.21 "in violation of 20 CFR 655.731(c) and 20 CFR 655.805(a)(2) (1995 - 20 CFR 655.731(c) and 20 CFR 655.805(a)(6))."  R. 0001-04.[2]  Additionally, the DOL assessed a civil money penalty in the amount of $40,000.  Id.  Pegasus thereafter requested a hearing before an Administrative Law Judge ("ALJ"), and, following a four-day hearing, the ALJ issued a decision dated November 13, 2002, reducing the damages assessed against Pegasus in connection with the wage deficiencies to $231,279.41, but affirming the assessment of a civil money penalty in the amount of $40,000.   R. 2448-58.

---

[1]        A lengthy and detailed account of the factual and procedural history of this case is included in my June 27, 2007 Opinion.  For the sake of brevity, I do not repeat that recitation here.

[2]        References in the Administrative Record will be designated by the abbreviation "R" followed by the page number, e.g. "R. 0001".

Thereafter, Pegasus and the DOL petitioned the DOL's Administrative Review Board (the "ARB") for review of the ALJ's decision, and on June 30, 2005, the ARB affirmed in part and reversed in part.  R. 2874-2885.  The ARB affirmed the ALJ's finding that Pegasus failed to effect *bona fide* terminations of certain H-1B employees that Pegasus claimed to have "laid off" and therefore agreed that Pegasus was under an obligation to pay back wages to those employees.  Id.  Additionally, the ARB accepted the ALJ's assessment of $40,000 in civil money penalties under 8 U.S.C.A. § 1182(n)(2)(C).  R. 2884.  However, the ARB reversed the ALJ's finding that the Administrator had failed to meet its burden of proof with regard to three non-testifying witnesses from whom interview statements had not been obtained and, with regard to two witnesses who testified that they were not owed back wages, and, accordingly, awarded back wages to those employees.  R. 2880-83.  Further, the ARB found that the ALJ had improperly given credit to Pegasus for miscellaneous payments to four employees because such payments did not qualify as "wages paid" under 20 C.F.R. § 655.731(c)(2)(i)-(ii).  R. 2883.  In reviewing the decision of the ALJ, the ARB expressly acknowledged the misapplication of 20 C.F.R. § 655.731(c)(5) (1995), which regulation had been declared invalid on procedural grounds in National Ass'n of Manufacturers v. Department of Labor, No. 95-0715, 1996 WL 420868 at *1 (D.D.C. July 22, 1996), noting that in reviewing the decision of the ALJ it would instead apply 8 U.S.C.A. § 1182(n)(2)(C)(vii)(I), which it considered "the same as the invalidated regulation."  R 2875.

Pegasus sought review of the ARB decision and the case was subsequently transferred to this Court by the Third Circuit pursuant to 28 U.S.C. § 1631.  The parties ultimately cross-moved for summary judgment and, on June 27, 2007, after considering the parties' various

3

arguments, I filed an Opinion and Order in which I granted the motion filed on behalf of

Pegasus and denied the motion filed by the DOL.  Pegasus Consulting Group, 2007 WL

1876507 at *5-9.  First, I noted that because the DOL brought the enforcement action which

was the subject of the appeal under 20 C.F.R. § 655.731(c)(5) and additionally obtained

employment records pursuant to 20 C.F.R. § 655.731(b)(1) at a time when it was permanently

enjoined from implementing and enforcing those very regulations, the focus of the appeal

centered on those invalidated regulations.  Id.  I found that although there were indeed

statutory provisions in place during the relevant time period pursuant to which the DOL could

have proceeded against Pegasus in connection with its alleged wage violations, "the DOL

indisputably charged Pegasus with the failure 'to pay wages as required in violation of 20

CFR  655.731(c) and 10 CFR  655.805(a)(2) (1995-20 CFR 655.731(c) and 20 CFR

655.805(a)(6)', see R. 0004, and the hearing conducted before the ALJ indisputably focused

on Pegasus' alleged violations of 20 C.F.R. § 655.731(c)(5) and involved employment

records obtained pursuant to 20 C.F.R. § 655.731(b)(1)."  Id. at 7.  I further noted that the

Court was troubled by the ARB's after-the-fact attempt to correct the error through its

application of 8 U.S.C. § 1182(n)(2)(C)(vii)(I), based upon its determination that the statutory

enactment was the same as the invalidated regulation.  Accordingly, I held that the ARB's

decision to base its ruling on 8 U.S.C. § 1182(n)(2)(C)(vii)(I) was nothing more than an after

the fact justification for an improperly prosecuted action and its failure to provide any

meaningful analysis whatsoever for its decision to uphold the ALJ's determination on

alternative statutory grounds was the very definition of arbitrary and capricious agency

action.   Id. at 8.

On July 12, 2007, the DOL sought this Court's reconsideration of the June 27, 2007

decision.  Pegasus thereafter filed opposition and, with the Court's permission, the parties

submitted reply briefs.  Additionally, Pegasus filed a motion for sanctions alleging that in

seeking reconsideration of this Court's June 27, 2007 decision, counsel for the Department of

Labor has repeatedly and intentionally violated the standing injunction issued by the Court in

National Ass'n of Manufacturers v. Department of Labor, No. 95-0715, 1996 WL 420868 at

*1 (D.D.C. July 22, 1996).

## II.        RECONSIDERATION STANDARD

While the Federal Rules of Civil Procedure do not expressly recognize motions for

"reconsideration," United States v. Compaction Sys. Corp., 88 F.Supp. 2d 339, 345 (D.N.J.

1999), the Local Civil Rules governing the District of New Jersey do provide for such review.

See Lite, N.J. Federal Practice Rules, Comment 6 to L.Civ.R. 7.1 (Gann 2008).  Local Civil

Rule 7.1(i) allows a party to seek reconsideration of a court's decision if there are "matters or

controlling decisions which counsel believes the Judge ... has overlooked." L. Civ. R. 7.1(i).

See also Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 215 F. Supp. 2d 482, 507 n.12 (D.N.J.

2002).[3]  Relief by way of a motion for reconsideration is "an extraordinary remedy" that is to

be granted "very sparingly." Interfaith Cmty. Org., 215 F. Supp. 2d at 507.  A motion for such

reconsideration must be filed "within 10 days after the entry of the order or judgment on the

original motion." L. Civ. R. 7.1(i).  A timely motion for reconsideration may only be granted

---

[3]       In Interfaith Cmty. Org., the court cited L. Civ. R. 7.1(g) as the provision governing a
motion for reconsideration in this district.  On February 24, 2005, however, certain amendments
to our Local Rules became effective and reconsideration motions are now governed by L. Civ. R.
7.1(i).

upon a finding of at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'" Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). Here, neither of the first two grounds for reconsideration are applicable, thus, the DOL must demonstrate clear error of fact or law or the need to prevent manifest injustice in order to prevail on its motion.  Indeed, a "party seeking reconsideration must show more than a disagreement with the court's decision," Panna v. Firstrust Sav. Bank, 760 F. Supp. 432, 435 (D.N.J. 1991), and will fail to meet its burden if it merely presents "a recapitulation of the cases and arguments considered by the Court before rendering its original decision." Elizabethtown Water Co. v. Hartford Casualty Ins. Co., 18 F. Supp. 2d 464, 466 (D.N.J. 1998) (quoting Carteret Sav. Bank, F.A. v. Shushan, 721 F. Supp. 705, 706 (D.N.J. 1989)). The Court will only grant such a motion if the matters overlooked might reasonably have resulted in a different conclusion.  Bowers v. Nat'l Collegiate Athletic Assoc., 130 F. Supp. 2d 610, 613 (D.N.J. 2001).  In sum, it is improper on a motion for reconsideration to "ask the Court to rethink what it ha[s] already thought through – rightly or wrongly." Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co., 744 F. Supp. 1311, 1314 (D.N.J. 1990)(*citations omitted*).

III.    **DISCUSSION**

      A.  ***The DOL's Motion for Reconsideration***

      The DOL offers two arguments in support of its motion for reconsideration.  See generally Defendant's Memorandum in Support of Motion for Reconsideration ("D. Rec. Br.").  The DOL's principle contention is that in reaching my decision that reversal of the

ARB's decision was warranted I overlooked the ARB's holding that Pegasus was liable not only for back wages based on non-productive time, but also for time the employees had actually worked, i.e., productive time.  Specifically, the DOL contends that I failed to consider back wages totaling $95,932.66, which are owed to seven H-1B workers for productive time and the $25,000 in civil money penalties that pertain to the productive time violations.[4]   Additionally, the DOL asserts that I overlooked substantial evidence in the record indicating that the Determination Letter, which I found to have indisputably charged Pegasus with the failure to pay wages in violation of the invalidated regulation, satisfied the notice pleading standards.  The DOL contends that manifest injustice in the form of permanent denial of the employees' statutorily-mandated wage will result if the foregoing purported errors of fact and law are not corrected and summary judgment in favor of Pegasus stands.

This Court has considerable discretion in deciding whether to grant a motion for reconsideration.  Upon review of the DOL's motion, I find that this is indeed one of those rare circumstances where reconsideration is warranted.  In the June 27, 2007 Opinion granting summary judgment in favor of Pegasus and denying summary judgment to the DOL, this Court limited itself to the issue of whether summary judgment was compelled by the DOL's prosecution of the enforcement action against Pegasus under invalidated and enjoined regulations.  In rendering the June 27, 2007 Opinion, I held:

----

[4]

      The DOL reasons that because civil money penalties were assessed in the amount of $5,000 each for willful violations as to eight employees, and five of those eight were among those employees owed back wages for productive time, $25,000 reasonably pertains to the productive time violations.  D. Rec. Br. at 4.

Clearly the basic notion of due process warrants a ruling by this Court that the ARB may not *sua sponte* find Pegasus culpable for violations of statutory provisions with which it was never charged.  This Court simply cannot accept the DOL's contention (DOL Rep. Br. at 4) that despite "the mistaken references" to the invalidated regulations in its initial determination letter, its statement in that letter that it concluded its investigation "under the H-1B provisions of the INA, as amended" somehow cured the deficiency in its Summary of Violations.  See R. 0001- 0004.  Moreover, the Court is particularly troubled here where the DOL proceeded in blatant violation of a court order which indisputably enjoined it three years earlier from implementing or enforcing 20 C.F.R. § 655.731(c)(5) and 20 C.F.R. § 655.731(b)(1).   The DOL does not dispute the application of the injunctive order entered by the district court in connection with 20 C.F.R. § 655.731(c)(5) and 20 C.F.R. § 655.731(b)(1).   Nor does it dispute the well established principle that "injunctive orders of courts be obeyed until modified or reversed by a court having the authority to do so."  See Pasadena City Bd. of Educ. v. Spangler, 427 U.S. 424, 439, 96 S.Ct. 2697, 2706, 49 L.Ed.2d 599 (1976).   There is no doubt that the DOL proceeded in investigating and prosecuting this action in accordance with its perceived authority under the invalidated regulations and not upon the statute.  The ARB's decision to base its ruling on the statute is nothing more than an after the fact justification for an improperly prosecuted action and its failure to provide any meaningful analysis whatsoever for its decision to uphold the ALJ's determination on alternative statutory grounds is the very definition of arbitrary and capricious agency action.  Accordingly, this Court finds that reversal of the ARB's decision is warranted.

[Pegasus Consulting Group v. Administrative Review Board for the Department of Labor, 2007 WL 1876507 at *8 (D.N.J. June 27, 2007)].   As noted in the June 27, 2007 Opinion, my decision to grant summary judgment on this basis was rooted in the Court's concern that in investigating and prosecuting this administrative action based upon the invalidated regulations, Pegasus was denied due process.  However, upon closer scrutiny of the administrative record based upon the DOL's contention that reconsideration is warranted

on due process grounds, I find summary judgment to have been improvidently granted on that basis.  Although the Court does not depart from its initial finding that the DOL indisputably charged Pegasus with a violation of the invalidated regulatory scheme and proceeded to prosecute the administrative action under the same invalidated regulatory scheme,  I find now, upon review of the record, that Pegasus's right to due process was not violated by the DOL's administrative error.

Throughout the course of the administrative proceeding before the ALJ, the parties and the ALJ proceeded as if the case was governed by 20 C.F.R. § 655.731(c).  In the briefing submitted by the parties in support of the motions for summary judgment, the parties did not explicate the manner in which the case was argued before the ALJ and the ARB, and, more specifically, how and when the mistaken references to invalidated 20 C.F.R. § 655.731(c) were uncovered.  In fact, in refuting the DOL's charges that Pegasus had improperly benched the subject H-1B workers during 1999-2000, counsel for Pegasus cited 20 C.F.R. § 655.731(c)(7) as the relevant regulatory provision.  As noted by this Court in the June 27, 2007 Opinion, however, 20 C.F.R. § 655.731(c)(7) was the successor to the invalidated 20 C.F.R. § 655.731(c)(5).  Inexplicably, counsel for Pegasus continued throughout the course of the administrative process to argue its case by citation to 20 C.F.R. § 655.731(c)(7), even after the DOL in its brief in support of its petition for review before the ARB expressly noted that the 1995 regulation, 20 C.F.R. § 655.731(c)(5) (1995), had been invalidated in National Ass'n of Manufacturers v. Department of Labor, No. 95-0715, 1996 WL 420868 at *1 (D.D.C. July 22, 1996) and that "the applicable statutory provision, 8 U.S.C. 1182(n)(2)(C)(vii)(I), which mirrors the invalidated regulatory requirement" should be utilized in reviewing the decision of the ALJ.  R. 2747, n.1.  At no time thereafter did Pegasus

9

avail itself of the opportunity to address the alleged violations in relation to 8 U.S.C. §
1182(n)(2)(C)(vii)(I).  Instead, counsel for Pegasus continued to cite 20 C.F.R. §
655.731(c)(7) as the applicable law in its "Responsive Memorandum of Law in Opposition to
the Administrator's Petition for Review" (R. 2795) and its "Reply Memorandum of Law in
Support of Respondent's Petition for Review" (R 2842).

In determining in the June 27, 2007 Opinion that Pegasus was denied due process, this
Court overlooked the critical fact that Pegasus indeed had an opportunity to respond to the
DOL's allegations against Pegasus under 8 U.S.C. § 1182(n)(2)(C)(vii)(I) and, whether
intentionally or unintentionally, it failed to do so.  To the extent that Pegasus believed that it
would have presented its case differently before the ALJ in terms of the evidence adduced at
the administrative hearing, or to the extent that it believed additional legal argument was
necessary under 8 U.S.C. § 1182(n)(2)(C)(vii)(I), it had an opportunity to address those issues
with the Board and failed to do so.

Moreover, reference to the actual language of 20 C.F.R. § 655.731(c)(7), under which
counsel argued the case, and 8 U.S.C. § 1182(n)(2)(C)(vii)(I), further evidences the lack of
any prejudice to Pegasus in the presentation of its case.  20 C.F.R. § 655.731(c)(7) provides:

> (i) *Circumstances where wages must be paid*.  If the H-1B non-
> immigrant is not performing work and is in a non-productive status
> due to a decision by the employer (e.g., because of lack of assigned
> work), lack of a permit or license, or any other reason except as
> specified in paragraph (c)(7)(ii) of the section, the employer is
> required to pay the salaried employee the full pro-rata amount due or
> to pay the hourly-wage employee for a full-time week . . . at the
> required wage for the occupation listed on the LCA . . . .

> (ii)  *Circumstances where wages need not be paid*. . . .   Payment need
> not be made if there has been a bona fide termination of the
> employment relationship.  INS regulations require the employer to
> notify the INS that the employment relationship has been terminated,

so that the petition is canceled (8 C.F.R. 214.2(h)(11)), and require the employer to provide the employee with payment for transportation home under certain circumstances (8 C.F.R. 214.2(h)(4)(iii)(E)).

The applicable statutory language, on the other hand, is as follows:

It is a failure to meet a condition of paragraph (1)(A) for an employer, who has filed an application under this subsection and who places an H-1B non-immigrant designated as full-time employee on the petition filed under section 1184(c)(1) of this title by the employer with respect to the nonimmigrant, after the nonimmigrant has entered into employment with the employer, in non-productive status due to a decision by the employer (based on factors such as lack of work), or due to the nonimmigrant's lack of a permit or license, to fail to pay the nonimmigrant full-time wages in accordance with paragraph (1)(A) for all such nonproductive time.

[8 U.S.C. § 1182(n)(2)(C)(vii)(I).]   Clearly the arguments made by counsel for Pegasus under 20 C.F.R. § 655.731(c)(7) were equally applicable to 8 U.S.C. § 1182(n)(2)(C)(vii)(I). Indeed, upon review of the language of both, it is clear that the statute does no more than 20 C.F.R. § 655.731(c)(7), which Pegasus mistakenly believed was applicable.

Pegasus objects to reconsideration on due process grounds essentially by arguing that the DOL had no authority to conduct the investigation in the first place in light of the invalidation of 20 C.F.R. § 655.731(b)(1) in National Ass'n of Manufacturers v. Department of Labor, No. 95-0715, 1996 WL 420868 at *1 (D.D.C. July 22, 1996) and, therefore, the DOL is "prohibited under even the most basic notions of due process from making use of the results of that proscribed investigation in its prosecution of Pegasus under *any* enforcement framework."  (Plaintiff's Brief in Opposition to Motion for Reconsideration ("Pl. Opp. Rec. Br.") at 3).  As the DOL points out, however, the DOL was authorized by both 20 C.F.R. §

11

655.800 (b), (c) [1995] [59 Fed. Reg. 65672], and 20 C.F.R. § 655.805 to inspect and copy

employer records during the relevant time frame.  Indeed, 20 C.F.R. § 655.800 provides:

> (b) Conduct of investigations.  The Administrator, either pursuant to a complaint or otherwise, shall conduct such investigations as may be appropriate and, in connection therewith, enter and inspect such places and such records (and make transcriptions or copies thereof), question such persons and gather such information as deemed necessary by the Administrator to determine compliance regarding the matters which are the subject of the investigation.

> (c) Availability of records.  An employer being investigated shall make available to the Administrator such records, information, persons, and places as the Administrator deems appropriate to copy, transcribe, question, or inspect.  No employer subject to the provisions of section 212(n) of the INA (8 U.S.C. 1182(n)) and/or subpart H or I of this part shall interfere with any official of the Department of Labor performing an investigation, inspection or law enforcement function pursuant to 8 U.S.C. 1182 (n) or subpart H or I of this part.  Any such interference shall be a violation of the labor condition application and the regulations in subparts H and I of this part, and the Administrator may take such further actions as the Administrator considers appropriate.

Further, 20 C.F.R. § 655.805(a)(6)[1995] [59 Fed. Reg. 65672] states that "The

Administrator, through an investigation either pursuant to a complaint or otherwise, shall

determine whether an H-1B employer has: (6) Failed to pay wages as required under §

655.731 of this part, for purposes of the assessment of back pages (pursuant to § 655.810(a)

of this part)."  Significantly, the Summary of Violations in the Determination Letter correctly

cited 20 C.F.R. § 655.805(a)(6)(1995).    The Court rejects Pegasus's contention that because

the subject of the investigation, i.e. 20 C.F.R. § 655.731(c)(5), was "improper as a matter of

law" both 20 C.F.R. § 655.800 (b), (c), and 20 C.F.R. § 655.805 cannot now be relied upon by

the DOL to authorize the investigation conducted by the DOL. Regardless of whether the

DOL was authorized to prosecute the case under 20 C.F.R. § 655.731(c)(5), it clearly had

valid regulatory authority to carry out its investigative and enforcement functions.  While 20

C.F.R. § 655.731(c)(5) may have been invalid, the subject matter of the investigation

certainly was not in light of 8 U.S.C. § 1182(n)(2)(C)(vii)(I), its statutory counterpart.

Moreover, as the DOL points out, Pegasus was clearly on notice of the requirements

regarding retention of records and public access by virtue of 20 C.F.R. § 655.760[1995] [59

Fed. Reg. 65670-71], which pertains to the records of wage rates to be paid H-1B employees

and explanation of the employer's actual wage system and payroll records.

Pegasus contends that the DOL raises the alternative regulatory investigative and

enforcement provisions for the first time in support of its motion for reconsideration and

asserts that the DOL actually conducted its investigation based strictly upon 20 C.F.R. §

655.731(b)(1).  The DOL, in turn, cites to the lack of any evidentiary support for Pegasus's

contention that the investigation was conducted under 20 C.F.R. § 655.731(b)(1).  While this

factual dispute cannot be resolved based upon the administrative record provided to this

Court, I nevertheless find that any factual dispute on this issue is immaterial given my

determination that the mere existence of investigative and enforcement authority under

alternative, valid regulatory provisions is sufficient to satisfy any due process concerns

regardless of whether such provisions were expressly relied upon by the DOL in conducting

its investigation.  This Court has presumed for the purposes of this motion that the DOL

indeed conducted its investigation based strictly upon the invalidated 20 C.F.R. §

655.731(b)(1).

In concluding that the existence of valid authority to conduct the investigation justifies

admission of the evidence adduced from an investigation conducted under an invalid

regulation, this Court draws guidance from the criminal law arena.  It is well established that

13

evidence is not "'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police.  Rather, the more apt question in such a case is, 'whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"  Hudson v. Michigan, 547 U.S. 586, 592 (2006) (*quoting* Wong Sun v. United States, 371 U.S. 471, 487 (1963)).  Moreover, "[t]he penalties visited upon the Government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve."  Id. at 593 (*quotations omitted*).  Here, Pegasus grounds its assertion that all evidence attained by the DOL during the course of its investigation conducted under an invalid and enjoined regulation is "fruit of the poisonous tree" in violation of its right to due process.  There can be no due process violation under the circumstances here, however, where Pegasus was clearly on notice of its obligation under alternate regulatory provisions to maintain and make available the evidence obtained.

Turning to the DOL's contention that reconsideration is additionally warranted because in rendering the June 27, 2007 Opinion I did not address the distinction between the ARB's findings regarding productive time wages and non-productive time wages, this Court agrees.  Although the ARB's findings regarding productive time wages were indeed before the Court by virtue of Pegasus's appeal, neither party focused on the distinction and this Court inadvertently failed to address productive time wages in rendering summary judgment.  Accordingly, I find that reconsideration is additionally warranted on that basis.

**B.** *Pegasus's Motions for Sanctions*

In response to the DOL's motion for reconsideration, Pegasus has filed a motion for sanctions.  Fed. R. Civ. P. 11 allows for "the imposition of sanctions when a motion is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose."  Spring Creek Holding Co., Inc. v. Keith, No. 02-cv-376, 2006 WL 2715148 (D.N.J. Sept. 22, 2006)(*quoting* Warren v. Guelker, 29 F.3d 1386, 1388 (9th Cir. 1994)).  Rule 11 sanctions are based on "an objective standard of reasonableness under the circumstances."  Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995)(*quoting* Landon v. Hunt, 938 F.2d 450, 453, n.3 (3d Cir. 1991)).  The imposition of Rule 11 sanctions is reserved for only exceptional circumstances in which the claim or motion is patently unmeritorious or frivolous.  Ford Motor Co. v. Summit Motor Prods., 930 F.2d 277, 289 (3d Cir. 1991)(citation omitted).  Therefore in considering a motion to impose sanctions under Rule 11, the Court must determine that (1) the claims are objectively frivolous, and (2) the person who signed the pleadings or other papers should have been aware that they were frivolous.  Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998).

As discussed above, this Court has considered the merits of the DOL's motion for reconsideration and finds reconsideration warranted on both grounds asserted.  Accordingly, this Court finds that sanctions are not warranted.

**C.** *The Parties' Cross-Motions for Summary Judgment*

In light of my determination that summary judgment in favor of Pegasus on due process grounds was unwarranted and is hereby vacated, the Court now turns to the two additional grounds for reversal asserted by Pegasus, and the arguments raised by the DOL in support of its summary judgment motion that were not addressed by the Court in the June 27,

15

2007 Opinion given my initial decision.  Specifically, (1) Pegasus's remaining contentions that (i) the Administrator lacked the requisite statutory authority to determine when there has been a *bona fide* termination of the H-1B non-immigrant employees; and (ii) the administrative record lacked substantial credible evidence to support the agency findings, and that such findings were arbitrary and capricious, and (2) the DOL's contention that summary judgment is warranted because the ARB's decision is indeed supported by substantial evidence and is neither arbitrary, capricious, nor did the ARB abuse its discretion in finding that Pegasus violated  8 U.S.C. § 1182(n)(2)(C)(vii)(I).

## 1.        Legal Standard

As discussed by this Court in the June 27, 2007 Opinion, although this case appears before this Court on cross-motions for summary judgment, judicial review of the ARB's final determination is governed by the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701 *et seq.*, rather than the typical summary judgment standard.  Accordingly, pursuant to Section 706(2), this Court must

> hold unlawful and set aside agency action, findings, and
> conclusions found to be –
>
> (A)  arbitrary, capricious, an abuse of discretion, or otherwise
> not in accordance with law;
> (B)  contrary to constitutional right, power, privilege, or
> immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations,
> or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to
> sections 556 and 557 of this title or otherwise reviewed on the
> record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are
> subject to trial de novo by the reviewing court.

16

[5 U.S.C. § 706(2)].  Thus, under the APA, the function of this Court is limited.  A reviewing court may not substitute its judgment for that of the agency.  Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 413-15 (1971), *overruled on other grounds*, Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).  Rather, "the court's inquiry is limited to determining whether the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choice made', Baltimore Gas & Elec. Co. v. Natural Res. Defense Counsel, Inc., 462 U.S. 87, 105 (1983), and 'whether there has been a clear error of judgment.'  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43 (1983)."  Sierra Club v. United States Army Corps of Engineers, No. 05-CV-1742, 2005 WL 2090028 at * 8 (Aug. 29, 2005).  Moreover, "substantial deference is given to an agency's interpretation of statutes it administers, and particularly to its own regulations, so long as the interpretation is a permissible one."  Id. (citations omitted).

### 2.  *The Administrator's Authority To Determine Start And End Dates of Employment*

As previously noted, 8 U.S.C. § 1182(n)(2)(C) requires employers to pay H-1B workers who are placed in non-productive status due to a decision by the employer, such as lack of work.  In response to the DOL's contention that it improperly placed the subject H-1B workers "on the bench" in violation of 8 U.S.C. § 1182(n)(2)(C), Pegasus took the position that it had terminated or "laid off" the employees and then, with respect to certain of those employees, later re-hired them to work on internal projects or subsequent client engagements.  The ARB's findings with regard to Pegasus's contention that the subject employees had been terminated were thus critical to its determination that Pegasus was under a continuing

17

obligation to pay wages to the employees for the time periods in issue in accordance with 8 U.S.C. § 1182(n)(2)(C).

Pegasus alleges in the First Count of its Complaint that "[t]he DOL does not have authority to determine when an H-1B employee's employment has terminated, as such is solely with the jurisdiction of the INS." Complaint, ¶ 26. Accordingly, Pegasus sought summary judgment on this basis alleging that because Congress did not authorize the Administrator to determine whether a *bona fide* termination of H-1B employment has occurred, the DOL could not unilaterally enlarge its limited delegation and is therefore unable to sustain its claims as a matter of law. The DOL likewise sought summary judgment on this issue.

In addressing the issue, the ARB rejected Pegasus's argument as without merit reasoning that "[b]ecause [the Wage and Hour Division of the DOL] has authority to decide when wages are due, it must be able to determine when an H-1B worker enters or leaves employment." R. 2877 (citing 8 U.S.C. § 1182(n)(2)(A)). Pegasus asserts that in so finding, the ARB unilaterally enlarged the limited delegation of power accorded to the Administrator under the relevant statutory and regulatory scheme. Pegasus reasons that if the DOL were indeed responsible for determining when a termination occurs, that authority would be set forth in unambiguous statutory or regulatory language. In the absence of any language to that effect, Pegasus argues that the DOL lacked the requisite authority to make that determination.

Additionally, Pegasus takes issue with the ALJ's and the ARB's reliance upon the 2000 preamble to Part 655 which, as noted in the June 27, 2007 Opinion, provides:

> [U]nder no circumstances would the Department consider it to
> be a bona fide termination if the employer rehires the worker if
> or when work becomes available unless the H-1B worker has

18

> been working under an H-1B petition with another employer,
> the H-1B petition has been canceled and the worker has
> returned to the home country and been rehired by the employer,
> or the nonimmigrant is validly in the United States pursuant to a
> change of status.

Pointing to the fact that the preamble language is not controlling and was not in existence during the relevant time frame, Pegasus contends that the ARB's reliance on the preamble "robs Plaintiff of its rightful expectation of at least constructive notice of all laws or regulations to which it will be held accountable." (Plaintiff's Brief in Support of Summary Judgment (P. Mot. Br. at 19)). Further, Pegasus contends that even assuming that the DOL is authorized to determine when a *bona fide* termination is effective, the ARB nevertheless committed reversible error in seizing on (i) the requirement at 8 C.F.R. § 214.2(h)(II) that an employer notify the INS when an employment relationship has been terminated; and (ii) the requirement at 8 C.F.R. § 214.2(h)(4)(iii)(E) that the employer provide the employee with payment for transportation home under certain circumstances, in finding that Pegasus had not effected *bona fide* terminations as to the subject employees.

This Court finds no error in the ARB's determination. First, as noted in the June 27, 2007 Opinion, substantial deference must be accorded to an agency's interpretation of its own regulations. See Pegasus Consulting Group v. Administrative Review Board for the Department of Labor, 2007 WL 1876507 at * 8 (D.N.J. June 27, 2007) (*citing* Sierra Club v. United States Army Corps of Engineers, 2005 WL 2090028 at * 8 (D.N.J. Aug. 29, 2005). The Court finds no error in the ARB's rejection of Pegasus's contention that an express delegation of authority to the Administrator as to the issue of whether a *bona fide* termination has occurred is required. This Court agrees that if the DOL has been delegated the authority

to decide when wages are due, it must necessarily be able to determine when the subject H-1B worker enters or leaves employment.

Nor is the Court troubled by the ARB's reference to the 2000 preamble to Part 655. While the ALJ indeed cited 20 C.F.R. Part 655 (Preamble at 80171) as controlling law (see R. 2449), the ALJ's mistaken reference to the Preamble as applicable is certainly not surprising in light of the fact that counsel for both the DOL and Pegasus cited 20 C.F.R. 655.731(c)(7)(2000) as the relevant regulatory provision. Nevertheless, the ALJ's error in this regard is harmless given the ARB's recognition of 8 U.S.C. § 1182(n)(2)(C)(vii)(I) as the applicable law and its further recognition of the fact that the Preamble was "instructive" on the issue of whether Pegasus had exacted *bona fide* terminations rather than "controlling". R. 2877. For the same reason, the Court finds no issue with the ARB's reference to 8 C.F.R. § 214.2(h)(II), which requires employers to notify the INS when an H-1B employment relationship has terminated, and 8 C.F.R. § 214.2(h)(4)(iii)(E), which requires the employer to provide the H-1B employee with payment for transportation home under certain circumstances. The Court finds nothing improper in the ARB's reference to INS requirements in determining whether a *bona fide* termination had occurred under its own statutory and regulatory scheme. While it is true that the DOL would certainly not be entitled to the same deference as the INS in its interpretation of those regulatory provisions given that it is not the agency that administers those regulations, that is not what occurred here. The Court does not find that the ARB abused its discretion in reviewing Pegasus's compliance with INS requirements pertaining to the subject H-1B workers INS requirements to ascertain whether Pegasus had effectuated bona fide terminations with regard to those H-1B workers as asserted.

20

### 3. *The DOL's Burden of Proof.*

#### a. The Admissibility of Hearsay Evidence.

Pegasus claims that underlying the ALJ's Initial Determination and Order "was a multitude of 'documentary evidence' sprung on Plaintiff at the opening of trial and comprised almost entirely of unauthenticated hearsay and embedded hearsay."  P. Mot. Br. at 22-23.  Specifically, Pegasus points to the admission by the ALJ of five uncertified and unsworn statements purportedly obtained by the DOL during what Pegasus characterizes as 'unwitnessed unverified telephone conversations with strangers never authenticated."  Id. at 23.  Pegasus then points to the following colloquy that occurred between counsel and the ALJ in response to Pegasus's objections to the admission of the documentary evidence at the hearing:

| | |
|---|---|
| Mr. Ruggiero: | Without any opportunity to cross-examine this person, it would be hearsay and the credibility would be – |
| Judge Romano: | Ms. Jacobs. |
| Mr. Ruggiero: | – extremely questionable – |
| Ms. Jacobs: | Your Honor, pursuant to 20 C.F.R. 655.821, the Federal Rules of Evidence do not apply to these proceedings. |
| Judge Romano: | Well, what rules of evidence do apply?  Do we have rules here? |
| Ms. Jacobs: | The provision says, as provided by the administrative procedure at [sic] 5 U.S.C. 556, any oral or documentary evidence may be received in proceedings under this part.  The Federal rules of evidence in Sub Part B of the Rules of Practice and Procedure for Administrative Hearings before the Office of Administrative Law Judges shall not apply. The principles designed to insure production of relevant and probative evidence shall guide the admission of evidence. |

[R. 1534-35].

21

Pegasus argues that 20 C.F.R. § 655.821 does not in fact exist and points instead to § 825(b), which provides: "As provided in the Administrative Procedure Act, 5 U.S.C. 556, any oral or documentary evidence may be received in proceedings under this part. The Federal Rules of Evidence and subpart B of the Rules of Practice and Procedure for Adminstrative Hearings Before the office of Administrative Law Judges (20 CFR part 18, subpart B) shall not apply, but principles designed to ensure production of relevant and probative evidence shall guide the admission of evidence. The administrative law judge may exclude evidence which is immaterial, irrelevant, or unduly repetitive." Pegasus then takes issue with the failure of DOL counsel to note that 5 U.S.C. § 556 provides that, subject to published rules of the agency and within its powers, employees presiding at hearings may rule on offers of proof and receive relevant evidence. P. Br. at 24 (citing 5 U.S.C. § 556(c)(3)). Thus, Pegasus argues, while it is true that the Federal Rues of Evidence do not strictly apply in administrative hearings, the Rules of Evidence of the Department of Labor indeed apply. Pegasus then cites to 20 C.F.R. §18.802, which prohibits the admission of hearsay unless specifically excepted by one of the several enumerated provisions, which provisions, it argues, are strikingly similar to those found in the Federal Rules. Accordingly, Pegasus argues that the DOL was unable to circumvent the Federal Rules of Evidence through any exception, including the unavailability of the witness, because the DOL procured no evidence at the hearing of its attempts to procure the witnesses' attendance. P. Mot. Br. at 24 (*citing* 29 C.F.R. § 18.804).

Similarly, Pegasus points to 29 C.F.R. § 18.809, which requires authentication of evidence prior to admission. Pegasus argues that because none of the witnesses' statements, e-mails, letters or other written evidence admitted during the hearings were subject to any authentication efforts, they should have been excluded. Pegasus contends that the standard for

authentication set forth in 29 C.F.R. § 18.901 was never satisfied and the prejudicial result of

the improper admissions cannot be undone because it was based on these alleged hearsay

statements that the ALJ based his determinations regarding the outstanding wages owed with

respect to several individuals.  Pegasus contends that the voluminous hearsay statements at

issue were not produced until the first day of trial leaving counsel "only minutes to review and

address substantial amounts of hearsay evidence, which comprised the vast majority of the

Defendant's case-in-chief."  P. Mot. Br. at 25.  In sum, Pegasus contends that voluminous and

severely prejudicial hearsay evidence, incapable of corroboration or authentication was

admitted over objection and that such hearsay evidence in no way constitutes substantial

evidence.  Id.   In short, Pegasus contends that while it is true that the ordinary rules of

evidence may be relaxed in administrative hearings, the relaxation has its limits.  Because the

admitted statements were substantially prejudicial and because they were relied upon by the

DOL to prove its case-in-chief, Pegasus argues that they tainted any impartiality with which the

ALJ might otherwise have approached the case, and further implies that the admission of the

"uncorroborated hearsay" violated its right to due process resulting in clear error requiring the

grant of summary judgment in its favor.  Id.; (Plaintiff's Reply Brief in Support of Summary

Judgment ("P. Rep. Br.") at 11).

        The DOL responds by pointing out that 29 C.F.R. § 18.1101(c) provides that

"[t]hese rules [of evidence] do not apply to the extent inconsistent with, or in conflict with, or

to the extent a matter is otherwise specifically provided by . . . a rule or regulation of specific

application prescribed by the United States Department of Labor pursuant to statutory authority

. . . ."  As the DOL explains, the applicable H-1B regulation provides that, like the Federal

Rules of Evidence, 29 C.F.R. Part 18, subpart B shall not apply to H-1B adjudications.  See 20

C.F.R. § 655.825(b)(1995).  Thus, the DOL contends, the rule against hearsay, contained at 29

C.F.R. § 18.801-806 does not apply to the administrative proceedings in this matter and any

objections on that basis lack merit.  Additionally, the DOL takes issue with Pegasus's

representation that the complained of evidence was sprung on it at trial without notice.  The

DOL points out that it was Pegasus that waited until December 22, 2001, only thirty days prior

to trial, to serve discovery requests on the Department.  D. Rep. Br. at 8, n. 6 (citing R. 24-25).

Pegasus's request for a continuance based on its late request was denied; however, the trial,

which began on January 22, 2002, was continued until February 26, and at the end of that day

of trial continued again until April 23, 2002, thus allowing Pegasus additional time to respond.

Id.

   This Court finds no basis upon which to overturn the admission of the

documentary evidence, including the uncertified, unsworn interview statements. The ARB

correctly noted that although the Federal Rules of Evidence are generally applicable in

administrative hearings (see 29 C.F.R. §§ 18.801-18.806)(2005)), "the rules of practice

governing adjudication of the H-1B program specifically allow consideration of hearsay

evidence." R. 2881 (*citing* 20 C.F.R. § 655.825(b)(1995)).[5]  Pursuant to 20 C.F.R. §

655.825(b)(1995),

> [A]ny oral or documentary evidence may be received in
> proceedings under this part.  The Federal Rules of Evidence and
> subpart B of the Rules of Practice and Procedure for
> Administrative Hearings Before the Office of Administrative

---

[5] While the ARB additionally noted that "on proof of pattern or practice, it was within the
ALJ's discretion and not error to admit witness statements in lieu of their testimony on the basis
that, once representative testimony was in the record, additional testimony would have been
'unduly repetitive' (i.e., cumulative)" (R. 2882), in admitting the interview statements, the ALJ
expressly found the documentary evidence, including certain interview statements to be
probative, relevant and authentic.  R. 1536-43.

> Law Judges (29 CFR part 18 subpart B) shall not apply, but
> principles designed to ensure production of relevant and
> probative evidence shall guide the admission of evidence.  The
> administrative law judge may exclude evidence which is
> immaterial, irrelevant, or unduly repetitive.

This Court agrees that 20 C.F.R. § 655.825(b)(1995) was indeed applicable to the

administrative hearing and finds no abuse of discretion in the ALJ's admission of the unsworn

statements or other documentary evidence.   As the DOL points out, the exclusionary rules

cited by Pegasus did not apply in light of 20 C.F.R. § 655.825(b)(1995).  Indeed, 29 C.F.R. §

18.1101(c) provides that "[t]hese rules [of evidence] do not apply to the extent inconsistent

with, or in conflict with, or to the extent a matter is otherwise specifically provided by . . . a

rule or regulation of specific application prescribed by the United States Department of Labor

pursuant to statutory authority . . . ."  Accordingly, the rule against hearsay, contained at 29

C.F.R. § 18.801- 806 simply does not apply to the administrative proceedings in this matter and

any objections on that basis lack merit.  See, e.g., Department of Labor v. Ken Technologies,

Inc., 2004 WL 2205233 at * 4 (DOL Adm.Rev.Bd. Sept. 30, 2004) ("[H]earsay is admissible in

administrative proceedings concerning the INA.  See 20 C.F.R. § 655.825(b)."); Santiglia v.

Sun Microsystems, Inc., 2005 WL 1827744 at *7 (DOL Adm.Rev.Bd. July 29, 2005) (finding

no abuse of discretion by ALJ based upon admission of hearsay evidence pursuant to 20 C.F.R.

§ 655.825(b) in INA case).    Moreover, any harm to Pegasus resulting from the timing of the

introduction of the hearsay evidence was attributable to Pegasus given its late demand for

discovery and was nevertheless tempered by continuation of the administrative hearing.

**b. Representative Testimony**

Pegasus next claims error in the ALJ's acceptance of testimonial evidence from four witnesses to form a representative basis to establish a pattern and practice of violation of the Act. According to Pegasus, "[n]o law or regulation sanctions the Administrator's attempt to extrapolate testimony of four witnesses to establish a 'pattern or practice' upon which to justify imposition of liability for an additional fifteen non-testifying witnesses in an INA matter." P. Mot. Br. at 27. Further explication of the factual background, including the testimony and documentary evidence proffered by the DOL at the administrative hearing, is necessary to a full understanding of Pegasus's claims of error in this regard.

As discussed in the June 27, 2007 Opinion, upon its receipt of ten complaints of unlawful wage practices, Compliance Officer Ronald Rehl of the DOL commenced an investigation of Pegasus. R. 1519. Rehl interviewed personnel, reviewed payroll records and other data submitted by Pegasus, including a chart captioned "Department of Labor Follow Up", which set forth the names of 18 of the 19 H-1B employees at issue in the Complaint and indicated the periods of time that the employees were "on leave without pay." R. 1038, 1552-53. According to the chart, many of the subject employees had "resumed active employment" with Pegasus after what was termed "leave[s] of absence." R. 1038, 1554. Also considered, was a letter sent by counsel for Pegasus in December 2000, in which counsel set forth its defense as to each of the ten complaints. As a result of the letter, Rehl found no violations in connection with two of the ten complaints, but found no basis for Pegasus's claims regarding the remaining eight complainants. R. 1549-51, 1583, 1607. In the December 2000 letter, Pegasus claimed that the employees had actually been "terminated." Id. In determining that

Pegasus had not effected *bona fide* terminations with respect to the 19 subject employees [6],

Rehl testified that he relied upon the documents produced by Pegasus and various interview

statements that demonstrated that Pegasus had "rehired" many of the employees.  R. 1554,

1612, 1616, 1651, 1661-62, 1667.   Rehl further based his determination on the fact that

Pegasus had failed to notify the INS of any of the purported terminations, reasoning that in

order to rehire an H-1B employee who has actually been terminated, an employer would be

required to apply for a new H-1B visa for that employee.  R. 1554.  Based upon Rehl's

investigation, the DOL determined that Pegasus owed back wages to 19 of the H-1B workers in

the amount of $401,228.21.

Following a four-day hearing, the ALJ concluded in his Decision and Order that

Pegasus had committed wage violations as to 14 of the 19 subject H-1B employees.  R. 2450-

55.  The ALJ based that determination on the direct testimony of four of the subject H-1B

workers who testified at the hearing on behalf of the DOL.  The ALJ characterized his factual

findings with regard to that testimony as follows:

> 1. <u>VEERAJU</u> - Alleged wage deficiency - $33,653.90
>    Period 1/23/99 to 9/19/99 - internal project work
>
> [Pegasus] insists that this individual was never
> authorized to travel to the United States for employment, but was in
> this country on vacation visiting relatives.
>       I find the testimony of this employee credible, and the
> documentation supporting this testimony contained at G20 more than
> sufficient to establish his employment with [Pegasus].  Particularly
> convincing is the evidence that [Pegasus] paid Veeraju's travel

---

[6] The nineteen H-1B employees, which are the subject of the action, are: Bikkani Veeraju,
Ganapathi Sudeswaran, Jagadish Thosecan, Senthil Nathan, Hanumachastry Rupakala, Bhaskar
Ganguli, Sathiyamoorthi Koteeswaran, Neeraj Jain, Sridhar Mukunda, Krishnanand Adka,
Shailesh Beri, Venkatesan Iyengar, Vinayak Joshi, Anupam Kumar, Jitendra Pahadia, Rajendra
Singh, Sriram Subramanariam, Meenakshi Sundaram Sundararaman, and Srinivas Tangirala.  R.
2450-55.

expenses (G20@E,F), and provided a corporate credit card (id. @I), as well as medical insurance (id.@J).  Also significant is the corroboration of his work for [Pegasus] by other employees (Tr. @339, G2@D; G9@D; G18@D).

The amount due this former employee is found to be $32,653.90 . . .

2. SUDESWARAN - Alleged wage deficiency -
$11,285.55
Period - 11/29/99 to 3/15/00 - non-
productive

[Pegasus] asserts that this employee was "terminated" in November, 1999.  But [Pegasus] admits that he was rehired in March, 2000 (see also G21 where [Pegasus] notes that this employee was "on leave without pay" from November, 1999 to March, 2000).

As there is no evidence that any of the exceptions to the preamble to 20 CFR §655, supra, apply, nor any evidence of notification to INS under 8 CFR 214.2, supra., I find that there was no bona fide termination of this individual, and thus, such individual is due the total unpaid wage asserted.

3. THOSECAN - Alleged wage deficiency - $19,437.07
Periods - 6/2/99 to 7/5/99 non-productive
7/6/99 to 12/31/99 - internal work
project

I find this individual's testimony to be credible.  In pertinent part, he arrived in the United States on May 2, 1999, was assigned to [Pegasus's] internal work project from early July, 1999 through October 4, 1999, and thence client-assigned through to the end of his employment.  The computation of wage deficiency (G1@5), is, however, somewhat confusing and also incorrect on its face.  The June 2, 1999 beginning date of the period of deficiency is explainable since 8 U.S.C. (n)(2)(C)(vii)(I) requires wages to be paid (in this individual's case) 30 days after first entry into the country.  However, since the internal project (wage deficient) work lasted only through early October 4,1999, there exists no explanation for running the end of the period of deficiency to December 31, 1999.  A wage deficiency of $36,057.75 was found for the period July 6, 1999 through December 31, 1999 (25 weeks).  But the Government concedes that this employee was properly paid for his work when assigned to clients, from early October, 1999 onward (Gov't Br. @38).  Accordingly, the proper wage deficiency established for the

28

internal project work would be only for the period July 6, 1999 through October 4, 1999, a period of 13 weeks at $1,442.31 or $18,750.03, not the $36,057.75 as computed at G1@5.

[Pegasus] counters this claim with the proposition that this employee was never authorized to travel to the United States for employment, but was visiting his brother here.  Also, [Pegasus] claims that this employee was assigned to the internal project, but only for July and August, 1999, and then terminated.

I find the documentation contained at G19, together with this employee's credible testimony amply supports the conclusion that he was authorized by [Pegasus] to travel to this country, that he was on non-productive status between June 2, 1999 and June 5, 1999, that he worked the internal project from June 6, 1999 to October 4, 1999, and that he was client-assigned thereafter.  I also find that since there is no evidence of notification to the INS of the alleged termination, no bona fide termination occurred, and, accordingly that this individual is due unpaid wages of $18,750.03.

* * *

6.  <u>NATHAN</u> - Alleged wage deficiency - $2,884.62
              Period - 9/20/99 - to 10/15/99 - non-
              productive

I find this individual's testimony credible.  He was initially assigned to a client project from November, 1998 to August, 1999, and then restarted on another client project in November, 1999.  He was not paid any salary from September 20, 1999 to October 15, 1999 (Tr. 394; G21).

Pegasus claims that this employee was on voluntary leave during this period when he was not paid, but Mr. Nathan adamantly denies that he ever requested any such leave, and credibly so (Tr.@405).  Accordingly, I find a wage deficiency in the full amount alleged to be due.

[R.  2450-52 (footnotes omitted).]

Further, the ALJ found the foregoing testimony sufficient to provide an "adequate

representative basis to establish a pattern and practice of violation of the Act" such that the H-

29

1B workers who did not testify could additionally recover unpaid wages.   R. 2452.   The ALJ

concluded that the representative testimony, as corroborated by evidence in the record in the

form of interview statements and documentation, supported an award of back wages to the

following ten H-1B workers who did not testify at the hearing: Beri, Singh, Joshi, Adka,

Kumar, Pahadia, Subramanariam, Tangilara, Inyengar and Sundararaman.   R. 2452-55.

    With respect to Beri and Singh, the ALJ expressly rejected Pegasus's claims that it

never authorized them to travel to the United States for employment.   The ALJ noted that Beri

"was reimbursed his airplane fare from India to the United States, as well as his travel to the

depart airport in Zurich, and from the San Francisco airport to his hotel (paid for by [Pegasus]

upon arrival in the United States."   R. 2452-53 (*citations omitted*).   Further, the ALJ noted that

"Singh, whom [Pegasus] claims was terminated in August, 1999, was actually sent a letter from

[Pegasus's] president on December 13, 1999 confirming his then current employment, and his

version of events is corroborated by other employees."   Id. (*citations omitted*).   The ALJ

additionally found Joshi's Interview Statements "worthy of belief, and the documentation

underlying the determined wage deficiency to be sufficiently supportive thereof."   Id.

(*citations omitted*).   The ALJ rejected Pegasus's contention that it terminated Joshi in May,

1999, because such claim was inconsistent with the fact that in November, 1999, it reimbursed

Joshi's travel expenses from Ohio to its New Jersey headquarters and from there to New York

to interview a prospective client. Id.  (*citations omitted*).

    Similarly, the ALJ found the "statement[s]"[7] of both Inyengar and Sundararaman

credible.   The ALJ found that Iyengar was placed on a client project in November, 1999, and in

---

[7]As no Interview Statement was introduced into the record for Inyengar, the ALJ was
clearly referring to the email correspondence and other written correspondence in the record
from Mr. Inyengar.   See R. 356-59 (G5).

January, 2000, was working at the help desk and preparing project proposals and that
Sundararaman "was asked in May, 1999, whether he was interested in, but never finally
offered, work on [Pegasus's internal project, and up until October 5, 1999, when he returned to
India for vacation, in reasonable reliance thereof, held himself available for such work" R.
2455 (*citations omitted*).  The ALJ further noted that "[t]he evidence preponderantly indicates
that neither of these employees were terminated as alleged by [Pegasus], and, at any rate, no
notice therefore was ever given to INS under 8 CFR 214.2, supra." Id.

　　　With regard to Adka, Kumar, Pahadia, Subramanariam, and Tangilara, the ALJ noted
only that Pegasus "admits that they were hired, 'fired' and then re-hired.  As there is no
evidence that any of the exceptions to the preamble to 20 CFR 655, supra, apply, nor any
evidence of notification to INS under 8 CFR 214.2 supra., I find that there was no bona fide
termination of these individuals, and thus such individuals are due the unpaid wages as noted."
R. 2454 (*citations omitted*).

　　　In contrast, the ALJ found insufficient evidence to award back pay to Koteeswaran,
Rupakala and Ganguli, noting

> [T]he Government has provided no statements or other sufficiently
> probative evidence underlying the wage deficiencies asserted (G6, G13,
> G4).  The unauthenticated payroll time sheet at G6, the undated
> employment agreements at G6 and G13, and the November 18, 1999 H-
> 1B petition letter at G4, fail to establish unpaid and due wages.  As no
> prima facie case is made as to these individuals, I am compelled to find
> that no wage deficiency is due.

[R. 2454-55.]

　　　Finally,  as to Jain and Mukunda, the two then-current Pegasus employees who testified
at the hearing on Pegasus's behalf, the ALJ found the credibility of their testimony limited to

their respective claims that they were paid the salary to which they were entitled while

employed by Pegasus, and, accordingly, found no wage deficiency.  R. 2451-52.  In regard to

Jain's testimony relative to his alleged conversations with other H-1B workers who are the

subject of this matter insofar as it corroborated Pegasus's version of the facts, the ALJ

expressly rejected those portions of Jain's testimony as not credible, noting that his presence in

this country entirely dependent upon his employment with Pegasus and his testimony was

therefore biased in favor of Pegasus.  R. 2453, n. 14.

In addition to affirming the ALJ's determination that Pegasus owed back wages to the

four testifying H-1B workers, the ARB agreed that H-1B workers who did not testify were

indeed eligible to recover unpaid wages based upon representative testimony.  R. 2880.  The

ARB reasoned:

> Veeraju, Sudeswaran, Thosecan, and Nathan were computer
> consultants.  So were the H-1B workers who did not testify.  Pegasus
> failed to pay "benched" H-1B workers or "laid off" the H-1B workers
> who testified or failed to pay them when they worked at corporate
> headquarters rather than for Pegasus clients.  The same is true of non-
> testifying employees.  Pegasus claimed no obligation to pay the H-1B
> workers who did testify on the ground that they were never authorized
> to come to the United States (Veeraju; Thosecan); that they never
> worked at corporate headquarters (Veeraju); that they took voluntary
> leaves of absence (Nathan); or that their employment was terminated
> (Sudeswaran; Thosecan) and they were re-hired.  And it made those
> same arguments with regard to the workers who did not testify.

[R. 2881.]

The ARB disagreed with the ALJ's finding that the DOL failed to meet its burden of

proof with regard to Koteeswaran, Rupakala and Ganguli, from whom interview statements

were not taken.  R. 2882.  The ARB concluded that notwithstanding the absence of testimony

or interview statements, the DOL "proved a pattern or practice of violations . . by means of

representative testimony of the four H-1B workers." R. 2882. The ARB reasoned that because the evidence established that three workers who neither testified nor gave witness statements were employed as programmer/analysts on client sites, were put on "leave without pay" without *bona fide* terminations, and subsequently resumed work on client projects using their original H-1B visas, the representative testimony was sufficient to prove pattern or practice of violations. Id. Similarly, the ARB found that the representative testimony and records proved that Pegasus did not properly terminate Jain and Mukunda despite their testimony to the contrary. In so finding, the ARB noted the ALJ's acceptance of their testimony that they were owed no back wages, but nevertheless concluded that the record shows that they were temporarily laid off due to lack of work. R. 2882-83. The ARB found no bona fide termination for Jain because "Pegasus told him they could not pay him, but did not notify him or the INS of the termination of his employment, as INS regulations require, 8 C.F.R. 214.2(h)(11), and Jain never actually began ("entered into") employment with the other company. After a layoff, Pegasus put Jain back to work on a consulting project in August 1999. Jain therefore falls into the category of employees who were temporarily laid off (and unpaid) due to lack of work." R. 2882-83 (*citations omitted*). With regard to Mukunda, the ARB found that "the record shows that Mukunda submitted time sheets to Pegasus, but like the others, was placed on leave without pay, in his case from September 19 through October 31, 1999, then resumed work for Pegasus in November 1999, while under the original H-1B visa." Id.

In support of its contention that the ARB's Final Decision and Order is not supported by substantial evidence, Pegasus argues that the ARB's reliance on representative testimony was improper and unsupported by substantial evidence in the record. Pegasus contends that the

case law cited to support the acceptance of representative testimony based upon pattern and practice is inapplicable.  According to Pegasus, the "pattern and practice" cases relied upon by the DOL and the ARB arose under the Fair Labor Standards Act ("FLSA"), not an INA matter such as this, and the justifications which form the basis for the admission of representative testimony in FLSA cases, i.e., where records are lacking and a pattern of conduct easily established, are inapplicable here where records are not lacking and the witnesses are dissimilar.  P. Mot. Br. at 27-28.  Additionally, Pegasus argues that the record demonstrates that each of the four witnesses who testified on behalf of Defendant were indeed factually dissimilar from one another and, thus, no "pattern" could be established that would permit representative testimony.

This Court does not agree.  First, I find no error in the ARB's citation to pattern and practice case law arising in the context of FLSA cases to support the acceptance of representative testimony in an INA matter.  It is well established that representative testimony may be used to establish a class-wide right to back pay.  See, for example, Martin v. Selker Brother, Inc., 949 F.2d 1286, 1298 (3d Cir. 1991) in which the Third Circuit recognized that "[i]t is not necessary for every single affected employee to testify in order to prove violations or to recoup back wages.  The testimony and evidence of representative employees may establish a prima facie proof of pattern and practice of FLSA violations.  See Donavan v. Simmons Petroleum Corp., 725 F.2d 83, 86 (10th Cir. 1983)(testimony of twelve employees sufficient to support award for all former employees);  [Donavan v. Williams Oil Co., 717 F.2d 503, 504-05 (10th Cir. 1983)] (testimony of nineteen attendants sufficient to establish pattern of hours worked for thirty-four attendants at nine separate stations); [Brennan v. General Motors Acceptance Corp., 482 F.2d 825, 829 (5th Cir. 1973)] (testimony of sixteen employees

sufficient to support award for all thirty-seven employees); Marshall v. Brunner, 500 F.Supp.

116, 122 (W.D.Pa. 1980)(testimony of forty-eight truck drivers working varying hours and

receiving different amounts of pay sufficient to support award to ninety-three employees), aff'd

668 F.2d 748 (3d Cir. 1982))."   While it is true that in so holding, the Martin Court cited the

employer's failure to comply with its statutory duty to keep adequate records as the basis for

the acceptance of representative testimony, here too there were indeed issues with the records

produced by Pegasus.  As the DOL points out, the payroll records failed to reflect the hours

worked on the internal work project and further contained information which was less than

clear as to the H-1B workers' employee status.  (D. Rep. Br. at 10) (citing R 1069-1476;. 1038,

1552, 1549-51, 1583, 1607).

     Additionally, this Court does not agree that any factual dissimilarities among the four

testifying witnesses precluded their consideration as representative testimony.  The testimony

of the four witnesses, as supported by the interview statements and documentary evidence,

indeed establish a pattern and practice whereby Pegasus failed to pay its H-1B workers for both

productive and non-productive time.  As the ARB noted, like the testifying employees, the non-

testifying employees were consultants who were unpaid during a period Pegasus designated as

leave without pay, lacked sufficient documentation of termination, and subsequently returned

to work for Pegasus.  The various arguments or defenses proffered by Pegasus in support of its

contention that it owed no back wages to the subject H-1B workers (i.e. that the workers were

never authorized to come to the United States, that they never worked at corporate

headquarters, that they took voluntary leaves of absence, or that they had been terminated and

subsequently rehired) were the same with regard to the testifying and non-testifying witnesses

– and they were unworthy of credence.  Accordingly, I find that the DOL met its burden of

establishing that the non-testifying employees and the employees who testified were entitled to compensation on the basis of pattern and practice.  Indeed, the burden is not an onerous one.  It is met with respect to a particular employee "if it is proved that the employee has in fact performed work for which he is improperly compensated and if the employee produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Reich v. Gateway Press, Inc., 13 F.3d 685, 701 (3d Cir. 1994).

### c.  Willful Violations

Lastly, Pegasus contends that the record lacks substantial evidence tending to demonstrate that the violations were willful, and thus, does not support the imposition of civil penalties for willful violations of the H-1B wage requirements.  Pl. Mot. Br. at 29-30.  The ALJ concluded that the evidence in the record amply supported the Administrator's imposition of civil money penalties for willful/knowing violations of the Act and further concluded that penalties in the amount of $40,000 based upon a finding of willfulness as to eight H-1B workers (Veeraju, Thosecan, Beri, Singh, Joshi, Kumar, Subraamanariam, and Iyengar) was more than fair.  R. 2455.

The ALJ's finding of willfulness was based upon his finding that Pegasus's president and sole shareholder, Paul Parmar, and its Vice President of Finance, S. Zarahirs, were fully aware of wage requirements for non-productive time under the H-1B visa program. According to the ALJ,

> Under the facts of this case, it is not possible to imagine that the responsible management of [Pegasus] did not knowingly fail to pay the legally required wages! And, as noted, no serious argument is advanced in this regard.  That financial concerns prompted the deficiencies in wage payments, is evident (Tr. 464-5, 537-8). Understandably, but not without consequences, H-1B visa status was not cancelled by notification to INS because of difficulties anticipated

> with the filing for new H-1B visas (Tr. 445, 709). [Pegasus]
> threatened to not return a "security deposit" (required of the
> employees to be paid to [Pegasus] before employment in the United
> States) unless they agreed in writing that no wages were due from
> [Pegasus] (see, for example, Tr. @ 264, 273, 399-400; G9@E).
> Finally supportive of [Pegasus's] "knowing/willful" violation of the
> Act is its initial documentary admission to the case investigator that
> certain of the subject employees were on "leave without pay" (Tr. 67-
> 8), a phrase inherently inconsistent with the statutory scheme here
> involved designed to protect the American worker from cheap,
> uncompetitive, foreign labor.

[R. 2456.]

The ARB agreed with the ALJ's conclusions, noting that Pegasus was indeed aware of

its obligation to pay workers for non-productive time, rationalized its non-compliance based

on lack of funds and then attempted to characterize the lay-offs as terminations and

improperly condition return of the H-1B workers' security deposits on the release of any

claims to back pay.  R. 2884.  Further, the ARB noted that Pegasus effectively admitted its

willful non-compliance when in its Petition for Review it stated that it "may have had some

general knowledge of its obligations to pay employees, its obligation to notify the INS upon

the cessation of an H-1B worker . . ., the obligation to pay H-1B employees while on 'the

bench', [and] its responsibility to provide transportation to the H-1B employees' country of

origin upon cessation of employment."  R. 2884 (*quoting* Pegasus Brief at 49).    Accordingly,

the ARB accepted the Administrator's assessment of civil penalties pertaining to eight of the

nineteen workers in the amount of $5,000 each to be a moderate exercise of the

Administrator's authority under the circumstances.  R. 2884.

This Court agrees that there is indeed substantial evidence in the record to support the

finding that Pegasus's violations of the Act were willful.  In objecting to the finding of

willfulness, Pegasus points to the fact that at least some of the discovery materials indicated

that the 19 H-1B workers in question had been terminated and its own admission that the

workers had been "laid off".  P. Mot. Br. at 29.  Citing the definition of the term "layoff" in

Black's Law Dictionary, Pegasus argues that nothing in the Act or its implementing

regulations prohibits "[a] termination of employment at the will of the employer.  Such may

be temporary (e.g. caused by seasonal or adverse economic conditions) or permanent."  Id.

(quoting Black's Law Dictionary, 614 (6th Ed. 1991)(emphasis added).   Further, Pegasus

argues that any reliance by the DOL on the fact that Pegasus did not cancel any of the visas in

support of a finding of willfulness is nonsensical because such cancellation is only within the

mandate of the INS.   Pegasus further cites to the fact that the INS regulations requiring

notification pre-date the passage of the American Competitiveness of the 21st Century Act

("AC21")(Pub. L. No. 106-313, 114 Stat 1251 (2000)), which created the concept of "H-1B

portability" to allow for greater mobility of H-1B workers and argues that the INS requirement

for notification of H-1B termination that would result in the agency's revocation of the

underlying petition, would be inconsistent with the public policy behind AC21.  This Court

finds Pegasus's arguments less than persuasive on this issue.  Pegasus is clearly unable to

refute the clear evidence in the record that Pegasus was fully aware of its obligations, and,

based upon financial concerns, failed to comply.  Indeed, the record demonstrates that prior to

mid-1999 when Pegasus changed its practice to offset a decline in business, Pegasus regularly

compensated its H-1B workers for time spent in nonproductive status.  R. 1693-94, 1943,

1981.

38

### III.    CONCLUSION

For the reasons discussed above, the Court will grant the DOL's motion for reconsideration, vacate this Court's original grant of summary judgment to Pegasus in the June 27, 2007 Opinion, grant summary judgment in favor of the DOL and deny Pegasus's motion for sanctions.  An appropriate Order shall follow.


        _____/s/ Freda L. Wolfson_____
        Honorable Freda L. Wolfson
        United States District Judge

Date: March 31, 2008